UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

ESTEBAN RIOS SOSA,
Petitioner,
v.
DANIEL A. BRIGHTMAN, et al.,
Respondents.

Case No.: 26-CV-4345 JLS (MMP)

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

(ECF No. 1)

Presently before the Court is Petitioner Esteban Rios Sosa's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 1). Also before the Court are Respondents' Return to Habeas Petition ("Ret.," ECF No. 10) and Petitioner's Traverse ("Traverse," ECF No. 11). For the reasons set forth below, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1).

## BACKGROUND

Petitioner is a native and citizen of Mexico who has resided in Oceanside since 1988. Pet. ¶ 22. Petitioner has been married to Luisa Ofelia Rodriguez Tejeda since 2003 with whom he shares two U.S.-citizen children, one of whom is a former Marine and another who is married to an active-duty Marine. *Id.* ¶ 23. Petitioner also has a U.S.-citizen son from a prior marriage and three U.S.-citizen grandchildren. *Id.* ¶¶ 23–24.

Petitioner has been employed with an automobile detailing company and has been a contributing member of the Oceanside community throughout his time in the U.S. *Id.* ¶¶ 25–27. In 2006, Petitioner's wife was a victim of a violent attack which resulted in her filing a Form I-918 Petition for U Non-immigrant Status with Petitioner listed as a derivative on the application. *Id.* ¶¶ 28–30. In 2024, Petitioner's wife was issued a Bona Fide Determination Notice "indicating the U visa application was bona fide, and she warranted a favorable exercise of discretion, but that it could not grant the U visa because the agency had reached the statutory cap for issuance of U visas for the year." *Id.* ¶ 34. Petitioner's wife was also issued an "Employment Authorization Document ("EAD") under category (c)(14), which pertains to individuals in Deferred Action status." *Id.* (citing 8 C.F.R. 2741.12). On January 7, 2025, Petitioner was also issued an EAD in connection with his U visa deferred action status. *Id.* ¶ 35.

On September 28, 2025, Petitioner, his wife, and his former-Marine son drove to the gate at Camp Pendleton to visit Petitioner's pregnant daughter who lived on the base with her active-duty Marine husband. *Id.* ¶ 36. Petitioner and his wife were stopped at the gate and detained, despite their REAL ID-compliant identification documents, deferred action status, and EADs. *Id.* Petitioner and his wife had visited their daughter on the base around ten times before without issue. *Id.* Petitioner and his wife were brought to the federal building in downtown San Diego, given ankle monitors, and told to report to an ICE check-in in two weeks. *Id.* ¶¶ 39–40. Petitioner and his wife were reassured multiple times that they would not be detained or deported at this check-in appointment. *Id.* ¶¶ 40–42. On October 9, 2025, Petitioner and his wife appeared at the federal building for their check-in. *Id.* ¶ 41. Petitioner was detained, taken to the basement of the federal building, told to put a mask on to avoid news cameras in the building, and deported to Mexico within twenty-four hours. *Id.* ¶ 42. Petitioner's wife was also detained, sent to Otay Mesa Detention Center, and ultimately released by an immigration judge due to her U visa deferred action status. *Id.* ¶ 45.

/ / /

Petitioner has remained in Mexico since. *Id.* ¶ 48. At the time of his deportation, Petitioner was provided with a document that stated "you are prohibited from entering, attempting to enter, or being in the United States . . . [f]or a period of 10 years from the date of your departure from the United States." Traverse at 8 (quoting ECF No. 11-1 Langarica Decl., Ex. A). Petitioner has not attempted to re-enter the United States. *Id.* During his time in Mexico, Petitioner's health has declined, he has missed the birth of his grandson and his daughter's college graduation, and his family has struggled financially without the benefit of Petitioner's stable income. Pet. ¶¶ 48–50. Petitioner has still not received any information about whether his deferred action has been revoked, nor has he received any notice of intent to revoke his deferred action. *Id.* ¶ 52. Petitioner now seeks this Court to order his return to the United States and restore his deferred action status. *See generally id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

/ / /

/ / /

/ / /

## DISCUSSION

### I. Jurisdiction

Respondents argue that the Court lacks jurisdiction because Petitioner has not attempted to re-enter the United States and has not satisfied the "extreme circumstances" exception to the custody requirement justifying an injunction to permit re-entry. Ret. at 2 (citing *Miranda v. Reno*, 238 F.3d 1156, 1158–59 (9th Cir. 2001)). Respondents contend that any court order requiring Petitioner's return to the United States would constitute a "so called 'obey the law' injunction[]." *Id.* at 4 (citing *Metro-Goldwyn-Mayor Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1226 (C.D. Cal. 2007)). The Court disagrees.

Typically, "[a] petitioner for habeas corpus must be 'in custody' for the court to have jurisdiction over his petition." *Nava v. Ceja*, 546 F. App'x 629, 631 (9th Cir. 2013). However, "the Ninth Circuit [has] found, where the government unlawfully removes a petitioner to a foreign country, rendering him unable to challenge his removal in the manner prescribed by the Immigration and Nationality Act, he remains 'an alien in custody pursuant to an order of deportation.'" *Juarez v. Noem*, No. 26-CV-801-DC-CKD (HC), 2026 WL 799976, at *4 (E.D. Cal. Mar. 23, 2026) (quoting *Singh v. Waters*, 87 F.3d 346, 349–50 (9th Cir. 1996)). The petitioner must demonstrate "extreme circumstances" to establish habeas jurisdiction when the petitioner is no longer physically in custody. *See Miranda*, 238 F.3d at 1159 (recognizing the exception to the custody requirement for habeas jurisdiction where the court retains jurisdiction over a non-citizen who has already been removed in "extreme circumstances"); *Nava*, 546 F. App'x at 631 (reaffirming the exception to the custody requirement for removed non-citizens in "extreme circumstances"); *Juarez*, 2026 WL 799976, at *5 ("[A] noncitizen unlawfully removed from the United States under extreme circumstances may seek their return despite no longer being detained in the district in which they seek relief.").

The Court is persuaded that Petitioner's unlawful removal constitutes "extreme circumstances." Respondents do not contest that Petitioner has deferred action status as a derivative of his wife's pending U visa application. Ret. at 1 ("At the time of removal,

Petitioner held deferred action status pending resolution of his U visa application."). As an individual with deferred action, Petitioner cannot be detained or removed unless his deferred action status has been properly revoked. *See, e.g.*, *Barahona-Gomez v. Reno*, 236 F.3d 1115, 1119 n.3 (9th Cir. 2001) ("'Deferred action' refers to an exercise of administrative discretion by the INS district director under which the INS takes no action 'to proceed against an apparently deportable alien' based on a prescribed set of factors generally related to humanitarian grounds." (internal citations omitted)); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) ("Approval of deferred action status means that, for the humanitarian reasons described below, no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." (internal quotation marks and citation omitted)). At the time of his removal, Petitioner's deferred action status was valid and active,[1] and thus he was ineligible for removal. Pet. ¶¶ 52–53.

Petitioner, with his valid deferred action status, was detained while attempting to visit his daughter on Camp Pendleton, forced to wear an ankle monitor, re-detained at a later check-in appointment, brought to the basement of the federal building, forced to wear a mask, and deported without notice or a hearing. *Id.* ¶¶ 36–44. Petitioner was not given notice that his deferred action status was revoked nor was he given an opportunity to contest his deportation. *Id.* ¶¶ 52–53. Respondents do not even attempt to counter Petitioner's conclusion that his summary deportation violated the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act. *See generally* Ret. The Court cannot fathom more "extreme circumstances" then an unlawful deportation without justification, notice, or any opportunity to be heard. *See Juarez*, 2026 WL 799976, at *5 ("Under Respondents' interpretation of the Ninth Circuit habeas jurisdiction exception, Petitioner does not present an 'extreme circumstance' warranting continued jurisdiction of

---

[1] In fact, as of the date of the filing of the Petition, Petitioner still has not received notice that his deferred action status has been revoked. Pet. ¶ 52.

her claim because—within the approximately twenty hours between her detention and her removal—Petitioner did not succeed in contacting and retaining counsel who could then prepare and file an emergency request for stay of her removal, and an immigration judge did not grant such an emergency stay request."). The Court thus finds that extreme circumstances exist, creating jurisdiction over the present Petition even though Petitioner is physically located in Mexico.

Further, the Court is not convinced by Respondents' argument that Petitioner must physically attempt to re-enter the United States for his claim to satisfy Article III. At the time of Petitioner's deportation, he was given a piece of paper that stated, "you are prohibited from entering, attempting to enter, or being in the United States . . . [f]or a period of 10 years from the date of your departure from the United States." Traverse at 8 (quoting ECF No. 11-1 Langarica Decl., Ex. A). Respondents would have Petitioner attempt to enter the United States in violation of this notice and warning, issued by the Department of Homeland Security, for his unconstitutional removal claim to be heard. The Court is not convinced that Article III requires such steps, and Respondents point to no authority requiring an attempted re-entry to establish standing. In fact, as Respondents indicate, "'an alien seeking entry into the United States' may use the writ of habeas corpus to 'test the validity of his exclusion' when 'restrained by authority of the United States.'" Ret. at 2 (quoting *Jones v. Cunningham*, 371 U.S. 236, 240 (1963)). Therefore, the Court finds that it has jurisdiction to review Petitioner's claims for unlawful removal.[2] *See Noem v. Abrego Garcia*, 604 U.S. ----, 145 S. Ct. 1017, 1019 (2025) ("The Government's

---

[2] The Court is also unpersuaded by Respondents' argument that because Petitioner is a potential member of the "Deferred Action Class" certified in *Immigration Center for Women and Children, et al. v. Kristi Noem, et al. ("ICWC")*, No. 25-CV-9848-AB-AS (C.D. Cal.), Petitioner's claims cannot be considered by this Court. Ret. at 5–6. Respondents cite no persuasive authority requiring this outcome, and the urgency of Petitioner's claims make waiting for class-wide relief untenable. *See, e.g.*, *Vargas Cervantes v. Mullin*, No. 26-CV-4467-DC-SCR, 2026 WL 1907198, at *3–4 (E.D. Cal. July 2, 2026), *report and recommendation adopted in part sub num. Cervantes v. Mullin*, 2026 WL 2030189 (E.D. Cal. July 14, 2026) (adjudicating the petitioner's individual claim even though he could be a potential class member of ICWC).

argument, moreover, implies that it could deport . . . any person . . . without legal consequence, so long as it does so before a court can intervene.") (citation omitted); *Juarez*, 2026 WL 799976, at *3–5 (finding jurisdiction when the petitioner, a recipient of DACA, was deported without notice or an opportunity to be heard).

**II. Merits**

Petitioner argues that his deportation without justification or consideration of his individualized circumstances violates the Due Process Clause. Pet. ¶¶ 127–34. The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001). "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted).

As discussed above, at the time of his detention and removal, Petitioner had deferred action status. "[A] person with deferred action should neither be removed nor detained for immigration enforcement [removal] purposes." *Immigr. Ctr. for Women & Child v. Noem*, 352 F.R.D. 324, 390 (C.D. Cal. 2026). Petitioner's deferred action clearly confers a protected liberty interest. *See id.* (finding deferred action conferred a protected liberty interest). As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See*

*Matthews*, 424 U.S. at 335. Courts must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

The Court finds that all three factors support a finding that the Government's summary revocation of Petitioner's deferred action status and subsequent removal without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his deferred action. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with and providing for his family and awaiting his U visa. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life."); *Immigr. Ctr. for Women*, 352 F.R.D. at 390 ("[The petitioners] built lives in reliance on their deferred action, which is itself a benefit that petitioners for victim-based benefits rely on to decide to come forward.").

Second, the risk of an erroneous deprivation of such interest is high as Petitioner was removed within twenty-four hours of his detention without providing him a reason for revocation or giving him an opportunity to be heard. Pet. ¶ 44. "Where as here, 'the petitioner has not received any . . . hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up). This risk is further accentuated by the fact that Petitioner should not have been detained at all, much less removed. *See Godinez Hernandez v. Mullin*, No. 26-CV-219-

ART-CSD, 2026 WL 937393, at *2 (D. Nev. Apr. 7, 2026) ("A person with a valid grant of deferred action cannot be removed.").

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "insubstantial and entitled to no weight." *See Immigr. Ctr. for Women*, 352 F.R.D. at 390. Respondents fail to point to any burdens on the Government if it were to have provided proper notice, reasoning, and a pre-deprivation hearing. *See generally* Ret.

Therefore, because Respondents detained and removed Petitioner without properly revoking his deferred action status and without justification, notice, or an opportunity to be heard, his removal was a violation of the Due Process Clause. *Juarez*, 2026 WL 799976, at *5, *9 (finding a due process violation and ordering her immediate return when a petitioner with deferred action was deported without notice or an opportunity to be heard); *Ramos-Lopez v. Bondi*, --- F. Supp. 3d ---, 2026 WL 1745700, at *9 (D. Md. June 17, 2026) (ordering the government to facilitate the petitioner's return to the U.S. after he was removed in violation of his deferred action).

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1). The Court **ORDERS** the Government to immediately allow Petitioner Esteban Rios Sosa to return to the United States. Upon Mr. Rios Sosa's return, he **SHALL** be restored to his prior immigration status and be entitled to all the rights and benefits afforded to him pursuant to his deferred action as if his October 2025 removal never occurred. Within <u>ten (10) days</u> of the issuance of this Order, the Parties **SHALL FILE** a joint status report regarding the Government's steps to facilitate Mr. Rios Sosa's return to the United States.

/ / /

/ / /

/ / /

/ / /

The Parties **SHALL FILE** a joint status report every ten (10) days until Mr. Rios Sosa is back in the United States and restored to his deferred action status. The Clerk **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: September 8, 2026

Janis L. Sammartino

Hon. Janis L. Sammartino
United States District Judge